IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-00293-RBJ

GARY P. FINK,

    Plaintiff,

v.

RAY SUMERALL, and
MV PUBLIC TRANSPORATION, INC., a California Corporation,

    Defendants.

---

# ORDER

---

Plaintiff moves to remand this case to the District Court for the City and County of Denver [ECF No. 13]. The motion is granted.

## BACKGROUND

Gary Fink works as a driver for MV Public Transportation, Inc. ("MV Transportation"). ECF No. 1-2 at ¶ 7. Mr. Fink and other MV Transportation employees, including Reynaldo Sumrall,[1] are members of United Service Workers Union, Local 455. ECF No. 1 at ¶¶ 7–8. The labor union and MV Transportation are parties to a collective bargaining agreement ("CBA"), which delineates their respective rights and responsibilities. *See id.* ¶ 7. In August 2016 Mr. Sumrall allegedly jabbed Mr. Fink in his side, causing him pain and aggravating his Crohn's disease. ECF No. 1-2 at ¶¶ 9–13.

---

[1] In his complaint, plaintiff refers to Mr. Sumrall as "Ray Sumerall." ECF No. 1-2 at 1.

1

Mr. Fink filed suit against Mr. Sumrall and MV Transportation in the Denver District Court on December 23, 2016. *Id.* at 1. Mr. Fink's complaint asserts three claims for relief: assault, battery, and negligent supervision. *Id.* ¶¶ 16–41. Defendants received notice of this action in January 2017. ECF No. 1 at ¶¶ 2–3.

Defendants filed a notice of removal with this Court on January 31, 2017. ECF No. 1. Defendants argue that although the complaint raises only state law claims and the parties are not diverse, they may remove to federal court plaintiff's negligent supervision claim under the "complete preemption" doctrine and section 301 of the Labor Management Relations Act ("LMRA"). *Id.* ¶ 9. The Court would then have supplemental jurisdiction over plaintiff's other two state law claims. *Id.* ¶ 14.

Plaintiff responded with the pending motion to remand. ECF No. 13. Plaintiff contends that the complete preemption doctrine does not apply here, so the case should be remanded back to the state court. *Id.*

## ANALYSIS

A civil action filed in a state court may be removed to federal court if the dispute "aris[es] under" federal law. *See* 28 U.S.C. §§ 1331, 1441(a). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "[R]emoval statutes[] are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1095 (10th Cir. 2005). The removing party bears the burden of establishing federal jurisdiction. *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).

Typically a federal court has original jurisdiction to hear a dispute only if a question of federal law appears on the face of the well-pleaded complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Thus, a defense based on the preemptive effect of a federal law usually will not provide a basis for removal. *See id.*

There is, however, a corollary to the well-pleaded complaint rule: the complete preemption doctrine. Under this doctrine, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 (1983). The Tenth Circuit has clarified that "complete preemption" should be understood

> not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.

*Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996). Accordingly, "removal based on preemption is permissible only if federal law provides a replacement cause of action. *Id.* at 1343.

Here, defendants argue that section 301 of the LMRA completely preempts plaintiff's negligent supervision cause of action due to the CBA between MV Transportation and its employees' union. Section 301 provides that any federal district court may hear suits based on the breach of a contract between an employer and a labor union. 29 U.S.C. § 185(a). The Supreme Court has read this provision expansively, holding that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between

an employer and a labor organization." *Franchise Tax Bd.*, 463 U.S. at 23 (internal quotation marks omitted). The Court later extended section 301's preemptive effect beyond contract cases, encompassing claims "relating to what the parties to a labor agreement agreed" whether styled as a breach of contract or tort. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

The test for whether a state tort claim is completely preempted by section 301 is "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213. In other words, section 301 preempts "claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement." *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000). In these situations, the state law "claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (citation omitted). And when claims are dismissed as preempted, a court may "permit amendment of [such] preempted state law claims to allege claims under § 301." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1215 (10th Cir. 2001).

Still, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Allis-Chalmers*, 471 U.S. at 211. Section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

Defendants contend that evaluation of plaintiff's negligent supervision claim is "inextricably intertwined" with the CBA, giving this Court jurisdiction to hear it. ECF No. 15 at 4. In Colorado, "[t]o establish a claim based on negligence, the plaintiff must show: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005). Factors relevant to determining whether such a legal duty exists may include: "the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor." *Id.* at 448. "No one factor is controlling," however, and the ultimate question is "whether reasonable persons would recognize a duty and agree that it exists." *Id.* In particular, to establish a legal duty in a negligent supervision action, a plaintiff must show that an employer could have recognized that an employee's character or prior conduct created an undue risk of harm to the people the employee encountered in performing his job. *Id.* An employer breaches this duty if it does not "take reasonable steps to prevent" such foreseeable harm from occurring. *Id.* at 450. Thus, "an employer 'who knows or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm may be directly liable to third parties for harm proximately caused by his conduct.'" *Id.* at 447 (quoting *Destefano v. Grabrian*, 763 P.2d 275, 288 (Colo. 1988)).

Given the elements of negligent supervision in Colorado, plaintiff's claim is not inextricably intertwined with the CBA—it stands independently. Neither side has submitted the CBA to the Court, but MV Transportation draws the Court's attention only to two provisions in which the agreement "explicitly defines management rights (Article 3) and expressly delineates

the disciplinary process (Article 8) available to Defendant MV Transportation." ECF No. 1 at ¶ 12. These provisions are irrelevant to a negligent supervision claim. MV Transportation's management rights and disciplinary procedures have no bearing on whether the company could have recognized that Mr. Sumrall's conduct would subject plaintiff to an unreasonable risk of harm, or whether it failed to take reasonable steps to prevent that harm from occurring. *See Keller*, 111 P.3d at 447. If a company knew that one of its employees had a history of violence, for example, and the employee went on to attack a coworker, the existence of the company's management rights and formal disciplinary process would not somehow render the company ignorant of the employee's dangerousness or make whatever actions it took (or did not take) per se reasonable.

Defendants are mistaken in relying on *Franklin v. Southern California Permanente Medical Group* for the alternative view that compliance with the CBA "might mean that [the employer's] supervision of [the alleged bad actor] was reasonable under the circumstances or even per se reasonable." ECF No. 15 at 6 (quoting No. CV05-0330 GAF MANX, 2006 WL 5309515, at *6 (C.D. Cal. Nov. 7, 2006)). Unlike the agreement here, that case involved a CBA with "provisions granting employees a safe workplace." *See Franklin*, 2006 WL 5309515, at *6. As a result, evidence of compliance with *that* agreement might have shown the employer's efforts to protect its employees to be reasonable, even if they ultimately proved to be inadequate. *See also Civardi v. Gen. Dynamics Corp.*, 603 F. Supp. 2d 393, 398 (D. Conn. 2009) (addressing a negligent supervision claim for the alleged harm of wrongful termination, and finding that this claim was preempted because it "does not exist independent of any rights established by the CBA," which allowed for the termination of union employees only for "just cause").

In a similar vein, defendants' argument ignores the principle that "removal based on preemption is permissible only if federal law provides a replacement cause of action." *Schmeling*, 97 F.3d at 1343. Absent a provision like that in *Franklin* guaranteeing employees a safe workplace, there is no suggestion that plaintiff's negligent supervision claim could be treated as a section 301 claim, or that the complaint could be amended to plead a replacement claim under section 301. *See Allis-Chalmers*, 471 U.S. at 220; *Garley*, 236 F.3d at 1215. It may not be enough for plaintiff to plead a violation of Article 3 or Article 8 of the CBA, since MV Transport may have complied with these management and discipline provisions while abusing its discretion to handle Mr. Sumrall in a way that would keep him from harming his coworkers. In any event, unlike the claims at issue in cases finding complete preemption, a claim for the tort of negligent supervision "is not of central concern" to the LMRA. *See Franchise Tax Bd.*, 463 U.S. at 25. *Compare* 29 Am. Jur. Trials 267, § 2 (summarizing related negligent hiring and retention doctrines as requiring an employer "to protect its own *customers or employees* from the willful acts of other employees" (emphasis added)), *with* 29 U.S.C. § 141(b) (stating in LMRA's congressional declaration of purpose that "[i]ndustrial strife which interferes with the normal flow of commerce and with the full production of articles and commodities for commerce, can be avoided or substantially minimized if employers, employees, and labor organizations each recognize under law one another's legitimate rights in their relations with each other").

Additionally, defendants fail to identify how plaintiff's negligent supervision claim supposedly depends on an interpretation of the CBA. Defendants quote no provision of the agreement and cite no potential ambiguity. *See* ECF Nos. 1, 15. Instead, defendants assert that MV Transportation's duty to plaintiff can be understood only by reference to Article 3's

management rights, and that a breach of that duty can be gauged only by looking to Article 8's disciplinary process. ECF No. 15 at 5–6. On the contrary, "[n]either inquiry requires a court to interpret, or even refer to, the terms of a CBA." *Karnes v. Boeing Co.*, 335 F.3d 1189, 1193 (10th Cir. 2003). MV Transportation's alleged duty to protect plaintiff may spring from its knowledge of Mr. Sumrall's character or conduct, and it may have breached this duty if it failed to take reasonable steps to prevent Mr. Sumrall from causing harm to others. *See Keller*, 111 P.3d at 447. Without evidence of Article 3 displacing all of MV Transportation's common law duties to its employees or Article 8 supplanting all other steps it may take in preventing its employees from harming other people, "there is simply no need to interpret the . . . CBA in order to ascertain whether" MV Transportation's actions were negligent, "and the actual meaning of the CBA . . . is not in dispute." *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1165 (10th Cir. 2004).

Notwithstanding this analysis, defendants argue that the Court should follow district courts sitting in other states and find the existence of a legal duty necessarily "inextricably intertwined" with the interpretation of the CBA's terms. As defendants note, a number of courts have held that "[a]ny duty to effectively train and supervise managers, or breach of such duty, is inextricably intertwined with the issue of discipline" as provided by a CBA. ECF No. 15 at 6 (quoting *Rivera v. Smith's Food & Drug Centers*, No. CIV 05-1049 RB/ACT, 2006 WL 4891275, at *6 (D.N.M. Feb. 16, 2006)); *see also Alvarez v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 554 (N.D. Tex. 2005) (same); *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1053 (N.D. Cal. 2005) (same); *Todd v. Safeway, Inc.*, No. C98-2369 TEH, 1998 WL 556577, at *6 (N.D. Cal. Aug. 28, 1998) (same); *Morris v. Ambassador Nursing Home, Inc.*, 845

F. Supp. 1164, 1168 (E.D. Mich. 1994) ("The nature of [the employer's] obligation to plaintiff with respect to its hiring, supervision and retention of the other defendants is governed by the CBA by virtue of its reference to [the employer's] policies for employee conduct and discipline."). Several other courts have similarly held that "[b]ecause any duty relating to the hiring, supervision or retention of employees in the collective bargaining context would arise solely from the collective bargaining agreement, resolution of these types of claims would require interpretation of that agreement." ECF No. 15 at 5 (quoting *Weatherholt v. Meijer Inc.*, 922 F. Supp. 1227, 1233 (E.D. Mich. 1996)); *see also Price v. Molokai Gen. Hosp.*, No. CIV.09-00548 DAE-KSC, 2010 WL 715413, at *3 (D. Haw. Mar. 1, 2010) (same); *Brown v. Royal Consumer Prod., LLC*, No. CIV.A. 3:06-CV-419-S, 2008 WL 2795334, at *4 (W.D. Ky. July 18, 2008) (same).

Numerous though they are, these district court cases do not move the needle in showing that *this* state's negligent supervision cause of action turns on the meaning of *this* CBA. And to the extent that these cases announce universal principles, I disagree with them. At common law, "an employer has a duty to protect its own *customers or employees* from the willful acts of other employees." 29 Am. Jur. Trials 267, § 2 (emphasis added). Here, for instance, plaintiff need not have been an employee for MV Transportation to be liable; MV Transportation's duty to plaintiff, if any, arose from its knowledge concerning Mr. Sumrall, while its breach of that duty, if any, arose from the actions it took respecting the alleged undue risk Mr. Sumrall presented to the people he encountered in his job. Yet if it were always true that "[a]ny duty to effectively train and supervise managers, or breach of such duty, is inextricably intertwined with the" CBA, or that "any duty relating to the hiring, supervision or retention of employees in the collective

bargaining context would arise solely from the collective bargaining agreement," then not even a customer could bring a negligent supervision action against a business with a CBA. *See Brown*, 2008 WL 2795334, at *4 (dismissing plaintiff's negligent supervision claim); *Weatherholt*, 922 F. Supp. at 1235 (same); *Rivera*, 2006 WL 4891275, at *8 (same); *Alvarez*, 398 F. Supp. 2d at 554 (same); *Busey*, 368 F. Supp. 2d 1055 (same); *Todd*, 1998 WL 556577, at *6 (same). This would be a particularly absurd result since complete preemption is permissible only when "federal law provides a replacement cause of action," *Schmeling*, 97 F.3d at 1343, but a customer-plaintiff would not have standing to bring a claim for a company's breach of its CBA with a labor union, *see Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994).

## ORDER

For the foregoing reasons, plaintiff's motion to remand [ECF No. 13] is GRANTED, and the case is remanded to the District Court for the City and County of Denver for further proceedings.

DATED this 21st day of March, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge